UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael John Modena,

        Petitioner,

v.

Federal Bureau of Prisons, and Warden
R. L. Morrison, Federal Prison Camp,

        Respondents.

MEMORANDUM OPINION
AND ORDER
Civil No. 06-1008 ADM/JSM

---

Michael John Modena, *pro se*.

James E. Lackner, Esq., First Assistant United States Attorney, Minneapolis, MN, on behalf of Respondents.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Petitioner Michael John Modena's ("Petitioner") Amended Petition for Writ of Habeas Corpus ("Habeas Petition") [Docket No. 9], Motion to Issue Temporary Restraining Order Against B.O.P. Collection of DNA ("Motion for TRO") [Docket No. 49], Resubmittal of Application for Writ of Audita Querela ("Audita Querela Motion") [Docket No. 50], Motion for an Order to Show Cause Why Respondents Should Not Be Adjudged in Contempt of Court ("Contempt Motion") [Docket No. 55], Request for Injunction in the Form of Interpleader Action and Exparte Request for Transfer due to Endangerment (collectively, "Transfer Motions") [Docket Nos. 58, 63], and various other motions and affidavits. For the reasons set forth below, Petitioner's Motions are denied, and Petitioner's Habeas Petition is dismissed.

## II. BACKGROUND

The full factual and procedural history of this case is described in previous orders and is incorporated by reference. In summary, Petitioner was sentenced on November 20, 2000, by United States District Court Judge Robert Holmes Bell, of the Western District of Michigan, to sixty months imprisonment with three years of supervised release for Conspiracy to Commit Income Tax Evasion in violation of 18 U.S.C. § 371. Anderson Decl. [Docket No. 20] ¶ 3, Attach. A. Petitioner was released from custody on November 12, 2004. Anderson Decl. ¶ 4, Attach. B. On July 21, 2005, Petitioner was sentenced to an additional twenty-four months imprisonment resulting from his supervised release violations. Anderson Decl. ¶ 6, Attach. F. The Petitioner is currently designated to the Federal Prison Camp in Duluth, Minnesota. Buege Decl. [Docket No. 21] at ¶ 3; Attach. A. Petitioner's currently scheduled release date is March 26, 2007. Anderson Decl. ¶ 6.

On March 20, 2006, Petitioner filed a Motion to Order Injunction [Docket No. 8] prohibiting the Federal Bureau of Prisons from collecting his DNA sample. On March 30, 2006, Petitioner filed an Amended Petition for Habeas Corpus. On April 6, 2006, Magistrate Judge Janie S. Mayeron issued an Order [Docket No. 10] that Respondents Federal Bureau of Prisons ("BOP") and Warden R. L. Morrison, Federal Prison Camp ("Respondents") answer Petitioner's Habeas Petition and address Petitioner's Motion to Order Injunction within thirty days of the Order. Respondents failed to timely respond. On May 9, 2006, Petitioner filed a Motion for Release on Habeas Corpus Writ [Docket No. 12]. Respondents then filed their Motion for Enlargement of Time to File Response/Reply [Docket No. 13] on May 11, alleging an inadvertent oversight. Petitioner responded by moving for default judgment and release [Docket

Nos. 14-16]. The Magistrate Judge granted Respondents' Motion for a time extension in an Order [Docket No. 17] dated May 18, 2006, and Respondents filed their Response [Docket No. 19] on May 26, within the time prescribed by the May 18 Order. Petitioner has since filed numerous motions and affidavits while his Habeas Petition remains pending.

On August 23, 2006, Petitioner filed the Motion for TRO pursuant to his Motion to Order Injunction, requesting that the Court enjoin Respondents from collecting Petitioner's DNA. On August 25, Petitioner filed the Audita Querela Motion, arguing that a newly discovered legal defense necessitated reconsideration of his sentence. On September 12, Petitioner filed the Contempt Motion, requesting that the Court hold Respondents in contempt for disregarding the Magistrate Judge's Order of April 6, 2006, by not filing "affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's incarceration." On September 27 and October 5, Petitioner filed his Transfer Motions, asking to be transferred to home confinement.

### III. DISCUSSION

**A.    Motion to Order Injunction and Motion for TRO**

Petitioner asks the Court to issue an injunction and an immediate TRO to prevent Respondents from collecting his DNA. Petitioner argues that such collection is beyond Respondents' authority and would violate Petitioner's constitutional rights. Id. Because Respondents succeed on the merits of the claim, the Motion to Order Injunction and Motion for TRO are denied.

The DNA Act is clear on its face that Respondents have the authority to collect Petitioner's DNA. "The Director of the Bureau of Prisons shall collect a DNA sample from each

3

individual in the custody of the Bureau of Prisons who is, or has been, convicted of a qualifying Federal offense . . . ." 42 U.S.C. § 14135a(a)(1)(B). "The offenses that shall be treated for purposes of this section as qualifying Federal offenses are the following offenses . . . (1) Any felony." 42 U.S.C. § 14135a(d).

Petitioner's constitutional objections to the application of the DNA Act are unavailing. Petitioner argues Fourth Amendment protection, but the Eighth Circuit has upheld the DNA Act against a Fourth Amendment claim. Noting that "[e]very federal circuit considering DNA indexing statutes has upheld the statutes as constitutional under the Fourth Amendment," the Eighth Circuit used a reasonableness test to determine that the DNA Act did not constitute an unreasonable search and seizure. United States v. Kraklio, 451 F.3d 922, 924-25 (8th Cir. 2006).

Petitioner also argues that because he committed his offense before the enactment of the DNA Act, it does not apply. The definition of "qualifying Federal offenses" has included "any felony" since October 30, 2004. Pub. L. No. 108-405, § 203(b), 118 Stat. 2260, 2270. Petitioner was sentenced on November 22, 2000. Anderson Decl. ¶ 3. However, the statutory language affords no basis for his theory that the felony or the conviction need to have taken place since the enactment of the law; the individual need only be in custody and at some time have been convicted of a qualifying offense. 42 U.S.C. § 14135a(a)(1)(B). Moreover, courts have repeatedly held that the qualifying offense need not have been committed while the DNA Act was in effect. See United States v. Hand, No. 05-00149-CR-01-MHS-1, 2006 WL 1933801, at *1 (11th Cir. July 13, 2006) (noting the lack of support for defendant's argument that application of the DNA Act had an impermissible retroactive effect because he committed his crimes before its enactment); United States v. Hartshorn, 163 Fed. Appx. 325, 330 (5th Cir. 2006) (holding that

even though the DNA Act was amended to include defendant's offense after he was convicted, the statute "indicates an intention for retroactive application" and does not violate the Ex Post Facto Clause because DNA collection is not punitive); United States v. Miles, 130 Fed. Appx. 108, 110 (9th Cir. 2005) (permitting collection of DNA sample for defendant convicted of bank robbery in 1974, even though defendant was on supervised release for an offense other than his qualifying offense).

Petitioner also alludes to the Eighth Amendment, citing "cruel and unusual punishment." There is no case law supporting the proposition that DNA collection is cruel and unusual punishment. Indeed, there is authority saying that it is not punishment at all. Hartshorn, 163 Fed. Appx. at 330. Collection of DNA is very minimally invasive.

Petitioner also interposes a general religious objection to the collection of his DNA. A review of case law reveals that the only court to consider this precise issue thus far is the United States District Court for the Northern District of New York. United States v. Kavoukian, No. 1:01-CR-017 (LEK), 2006 WL 2039995 (N.D.N.Y. July 20, 2006). In Kavoukian, the district court found that the DNA Act did not violate the defendant's right to free exercise of religion under the First Amendment to the Constitution. Id. at *4. The court found that "the DNA Act is a neutral statute that applies to anyone convicted of a felony and without regard to such person's religious affiliation or ideology," and that "the object of the DNA Act is to establish a federal DNA database to assist in the identification, arrest, and prosecution of criminals," not to burden a religious practice. Id. The Court finds the reasoning in Kavoukian persuasive. The DNA Act is a neutral, generally applicable statute that does not intend to burden religious practice but

rather intends to assist in the identification and arrest of criminals. Petitioner's general religious objection must fail.

Finally, Petitioner's citation of 18 U.S.C. § 3626 is irrelevant in this context because the statute addresses "civil action[s] with respect to prison conditions." 18 U.S.C. § 3626(a)(1)(A). The instant action is a habeas petition; its purpose is to challenge the fact or duration of Petitioner's confinement, and its remedy is release from prison. Preiser v. Rodriguez, 411 U.S. 475, 483-84 (1973); Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996). "If the prisoner is not challenging the validity of his conviction or the length of his detention . . . then a writ of habeas corpus is not the proper remedy." Kruger, 77 F.3d at 1073. Even if this were a civil action described in section 3626, Petitioner would be unsuccessful. Because the conditions complained of (taking a DNA sample) are authorized by a federal statute that has withstood constitutional challenge, there would be no violation of a "federal right." See 18 U.S.C. § 3626(a)(1)(B)(ii).

Respondents are authorized by statute to collect Petitioner's DNA. Petitioner's Motion to Order Injunction and Motion for TRO must therefore be denied. This ruling is meant to address all references in Petitioner's various filings to Respondents' collection of his DNA, including Petitioner's Motion at Docket Number 61.

**B.     Audita Querela Motion**

Petitioner seeks the writ of audita querela on the theory that United States v. Mitsven, 452 F.3d 1264 (11th Cir. 2006), arose after his conviction and provides a new legal basis for challenging his sentence. In Mitsven, the Eleventh Circuit affirmed the imposition of supervised release following revocation of the defendant's probation. Id. at 1264. The court held that the

criminal statute in question required the district court to impose supervised release. Id. at 1268-69.

The writ of audita querela is abolished in civil cases. Fed. R. Civ. P. 60(b). Thus, Petitioner's references to Rule 60(b)(4) are inapposite. However, it may be arguable that the writ of audita querela survives in federal criminal cases. United States v. Valdez-Pacheco, 237 F.3d 1077, 1079 (9th Cir. 2001). The writ is available, if at all, where a legal objection to a defendant's conviction arises after conviction, and where no other postconviction remedy is available to redress the claim. United States v. Holder, 936 F.2d 1, 5 (1st Cir. 1991). The writ of audita querela serves only to "fill gaps in the current systems of postconviction relief." Valdez-Pacheco, 237 F.3d at 1079-80; United States v. Banda, 1 F.3d 354, 356 (5th Cir. 1993). For example, audita querela is not available where a challenge to a conviction or sentence is cognizable under a motion pursuant to 28 U.S.C. § 2255. Valdez-Pacheco, 237 F.3d at 1080. "[I]t is well established that such writs cannot be used to challenge a conviction or sentence when the same issues could have been raised in a petition under 28 U.S.C. § 2255. . . . [M]ost courts construe such writs as petitions under Section 2255." Corral v. United States, 436 F. Supp. 2d 1045, 1046 (D.N.D. 2006). Although the Eighth Circuit has not ruled on the question of audita querela, its district courts have widely adopted the general rule. See, e.g., id.; United States v. Gregory, No. CRIM. 96-50001-002, 2006 WL 1281697 (W.D. Ark. May 8, 2006); Foster v. United States, No. 4:05-CV-1013-SNL, 2005 WL 3478666 (E.D. Mo. Dec. 20, 2005).

Here, Petitioner's claims regarding his sentence are cognizable in a § 2255 motion. "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that . . . the sentence was in excess of the maximum authorized

by law . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.  Petitioner is arguing that his sentence exceeds the statutory maximum.  This argument is appropriately addressed in a § 2255 motion to his sentencing court in the Western District of Michigan.

Even if audita querela were available to Petitioner, his claim that the Mitsven case provides a new legal defense lacks merit.  First, this court lacks subject matter jurisdiction to reconsider a sentence imposed in another jurisdiction.  DeSimone v. Lacy, 805 F.2d 321, 323 (8th Cir. 1986).  Second, a subsequent change in the law does not appear to constitute a legal objection for purposes of audita querela.  See Foster, 2005 WL 3478666 at *1 ("The courts that have considered the question of whether a post-judgment change in the law is a grounds for audita querela relief have answered in the negative.  This is true even in cases where the post-conviction change in law could not be raised in a § 2255 action.") (internal citations omitted).  Third, the Mitsven court addressed a situation where the statute mandated supervised release; it did not hold that absent such a mandate, supervised release would necessarily be impermissible.  See Mitsven, 452 F.3d at 1267.   Finally, Eleventh Circuit cases are not binding on this court.  Therefore, Mitsven does not present a viable legal objection to Petitioner's conviction.

Petitioner's Audita Querela Motion refers to the conditions of his confinement, alleging "threats" to take Petitioner's DNA, the denial of Petitioner's phone privileges, and a "virus out-break."  The DNA issue is resolved by the foregoing discussion of Petitioner's Motion for Injunction and Motion for TRO.  To the extent that Petitioner seeks to otherwise challenge the conditions of his confinement, he must do so by filing a civil action and not by seeking the writ of audita querela.

The writ of audita querela is not available to Petitioner because his sentencing claims can be redressed by a § 2255 motion, and because he has not adduced a new legal defense. The Audita Querela Motion is denied.

### C.    Contempt Motion and Ex Parte Request

Petitioner claims that Respondents violated the Magistrate Judge's April 6 Order by failing to provide along with their response to Petitioner's habeas petition "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's incarceration." "A party seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order." Chicago Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000). Because Petitioner has not met his burden of showing that the Order was violated, the Motion must be denied.

Petitioner claims that Respondents' response did not include required affidavits and exhibits. However, the court record reflects that Respondents filed the documents contemplated by Magistrate Judge Mayeron's Order on May 26, 2006, as attachments to the Anderson Declaration and the Buege Declaration [Docket No. 21]. Petitioner cites a general lack of "evidentiary documents," the lack of "testimony by the Probation Officer . . . on the witness stand," and the lack of various other documents. However, Petitioner's arguments show his false assumption that Respondents are required to address the legality of his criminal conviction and supervised release revocation. As already stated, this Court does not have jurisdiction to consider a challenge to the legality of a sentence imposed in another jurisdiction. DeSimone, 805 F.2d at 323. Such a challenge may be raised in a section 2255 motion to the sentencing court. Because Respondents have not violated the April 6 Order, Petitioner's Contempt Motion

9

must be denied. This ruling addresses all references in Petitioner's various filings to Respondents' contempt of court and failure to file appropriate affidavits, including Docket Numbers 30, 61, 64, and 69.

On October 5, 2006, Petitioner filed an Exparte Request for Conference Call [Docket No. 62]. Petitioner suggests in his request that a conference call is necessary to discuss the "lack of evidence in law being used to hold the Petitioner," and appears to argue that the conference call is necessary to resolve his Contempt Motion. Because the Contempt Motion is resolved in this Order, there is no need for a conference call, and Petitioner's Request is denied.

**D.      Transfer Motions**

In several of Petitioner's Motions, he argues for immediate release, or transfer to a halfway house or other alternative confinement arrangement, pursuant to the recent case Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006). In Fults, the Eighth Circuit ruled that BOP regulations that limited prisoner eligibility for placement in a halfway house to the last ten percent of their sentences being served, not to exceed six months, were unlawful. Id. at 1088-89. The court had previously held that "the BOP has the discretion to transfer an inmate to a CCC at any time, but only the duty to consider a transfer to a CCC in the last six months of a sentence." Fults, 442 F.3d at 1089-90 (citing Elwood v. Jeter, 386 F.3d 842, 845-47 (8th Cir. 2004)); see also 28 U.S.C. § 3624(c). The BOP's new regulations were meant to be a categorical exercise of that discretion, which it argued was permissible under 28 U.S.C. § 3621(b). Section 3621(b) vests in the BOP the discretion to designate the location of a prisoner's confinement, and provides a list of factors for the BOP to consider in making that determination. 18 U.S.C. § 3621(b); Fults, 442 F.3d at 1090. The court held that consideration of the factors was not discretionary but required,

and that the factors should be considered with respect to each inmate on an individualized basis. Fults, 442 F.3d at 1091. The regulations at issue categorically prevented the BOP from considering the factors with respect to prisoners who were not in the last ten percent of their sentences, which was held to be impermissible. Id. at 1092.

Petitioner misreads Fults to require that the BOP or the Court offer him placement in a halfway house upon his request. In fact, Fults recognizes that "[t]here is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment." Id. at 1090. Under Fults, the BOP must consider the statutory factors when deciding where to confine Petitioner. The BOP must not categorically decline to consider prisoners who are not yet serving the last ten percent of their sentences for placement in a halfway house. The BOP has a "duty to *consider* a transfer to a [halfway house] in the last six months of a sentence." Id. at 1090 (emphasis added). The BOP is not, however, required to *conclude* that a halfway house is the proper place for Petitioner merely because he is in the last six months of his sentence. See, e.g., Dortch v. Morrison, 2006 WL 2788181, at *3 (D. Minn. Sept. 26, 2006) ("[N]either Fults nor any other authority to which the court has been alerted requires that the BOP . . . immediately transfer a prisoner to a halfway house, on demand of the prisoner."); Tuter v. Sanders, No. 2:06CV00143 HDY, 2006 WL 2715035, at *3 (E.D. Ark. Sept. 22, 2006) ("The . . . placement decision made by the BOP may not be what [the prisoner] desires, but Fults v. Sanders does not mandate a certain result. Fults v. Sanders merely requires that he receive individual consideration . . . ."); see also Wadi v. Morrison, 2006 WL 2418916, at *1 (D. Minn. Aug. 21, 2006). Fults governs the manner of consideration required; the outcome of that consideration rests squarely in the discretion of the BOP. This Court will not interfere

with the exercise of that discretion. Accordingly, Petitioner's Transfer Motions must be denied. This ruling addresses Petitioner's various filings on the issue of transferring him to home confinement or other alternative custody arrangements, including Docket Numbers 31, 40, and 53.

**E.     Habeas Petition**

Petitioner filed a Habeas Petition pursuant to 28 U.S.C. § 2241, arguing that he has exhausted his administrative remedies, the BOP has incorrectly calculated the date when he should be released from prison, and his sentence violates various statutes and sentencing guidelines.

28 C.F.R. § 542 sets forth the three-part administrative remedy a federal inmate is to pursue if he wishes to raise concerns regarding his confinement. Petitioner is required to exhaust his administrative remedies before he can file a habeas petition challenging the length or duration of his sentence, or the conditions of his confinement. See United States v. Chappel, 208 F.3d 1069, 1069 (8th Cir. 2000); United States v. Bayless, 940 F.2d 300, 304-05 (8th Cir. 1991). Respondents aver that Petitioner has not filed any administrative remedies, on any level, regarding the calculation of his sentence or challenging the collection of his DNA. Buege Decl. ¶ 6, Attach. B.

The Court is unable to decipher all of the Administrative Remedy Generalized Retrieval Data filed by Respondents, as many of the complaints asserted by Petitioner involve the use of acronyms for which there is no key. See Buege Decl. Attach. B. However, a review of the form reveals that Respondents are correct in asserting that none of the entries appear to relate to a complaint about the calculation of Petitioner's sentence or the collection of his DNA. Petitioner

12

has attached to his Petition copies of "Inmate Request to Staff" forms in which Petitioner raises questions about early release and the correct calculation of his sentence. Petitioner also attaches copies of responses from Supervisory Inmate Systems Specialist Anna Anderson and Acting Warden J.F. Caraway which state that Petitioner's release date has been correctly calculated. Even if these requests are construed as informal attempts by the Petitioner to resolve his grievances administratively, there is no evidence that Petitioner completed the administrative remedy process by appealing the Warden's response to the Regional Director or to the Central Office of the BOP. See 28 C.F.R. § 542. Because there is no evidence that Petitioner has exhausted his administrative remedies, his Habeas Petition is dismissed.

Even if Petitioner had exhausted his administrative remedies, his Habeas Petition would still be dismissed. Petitioner argues that the BOP has incorrectly calculated his sentence, and that his current term of imprisonment should run concurrently with his previous term of imprisonment, thus resulting in an earlier release date. 18 U.S.C. § 3585(a) states that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." BOP Program Statement 5880.28, page 1-12 states: "If the prisoner is serving no other federal sentence at the time the sentence is imposed . . . the sentence commences on the date of imposition . . . . If the prisoner is, however, serving another federal sentence at the time a new sentence is imposed, then 18 U.S.C. § 3584 . . . . must be followed . . . ." 18 U.S.C. § 3584 states in relevant part "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . . . Multiple terms of imprisonment imposed at

different times run consecutively unless the court orders that the terms are to run concurrently." Finally, 18 U.S.C. § 3585(b) states:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

On November 12, 2004, Petitioner was released from his term of imprisonment on the underlying offense, and was placed on supervised release. Anderson Decl. ¶ 4, Attach. B. On July 21, 2005, Petitioner was sentenced to twenty-four months imprisonment resulting from his violation of the conditions of supervised release. Anderson Decl. ¶ 6, Attach. F. Pursuant to 18 U.S.C. § 3585(a) and P.S. 5880.28, page 1-12, Petitioner's new sentence began on the date that it was imposed: July 21, 2005. Petitioner is not entitled to have his supervised release violation imprisonment term run concurrently with his term of imprisonment on the underlying offense, because Petitioner had been discharged from his term of imprisonment on the underlying offense on the date that his new term of imprisonment was imposed. See 18 U.S.C. § 3584. Also, there is no evidence that Judge Bell ordered Petitioner's new term of imprisonment to run concurrently with his previously served term of imprisonment. See Anderson Decl. Attach. F. Further, pursuant to 18 U.S.C. § 3585(b), Petitioner can not receive credit for time that has already been credited against his previous sentence, and Petitioner's previous sentence is not a credit against his current sentence. See United States v. Kramer, 12 F.3d 130, 132 (8th Cir. 1991). Petitioner did receive jail time credit from the date of his arrest on June 29, 2005, to the day before his sentence began on July 20, 2005. Anderson Decl. ¶ 6. Respondents aver that Petitioner's

scheduled release date is March 26, 2007, which accounts for jail credit and good conduct time he is projected to earn. Based on an analysis of the applicable statutes and the documents submitted by Respondents, Petitioner's sentence has been calculated appropriately.

Finally, in his Habeas Petition and in various other Motions before the Court, Petitioner repeatedly argues that he should be released because his sentence exceeds the statutory maximum, the statute of conviction does not provide for a term of supervised release, and various other sentencing arguments. A § 2241 habeas petition is not an appropriate vehicle for Petitioner's sentencing arguments. "It is well settled a collateral challenge to a federal conviction or sentence must generally be raised in a motion to vacate filed in the sentencing court under § 2255 . . . and not in a habeas petition filed in the court of incarceration . . . under § 2241." Hill v. Morrison, 349 F.3d 1089, 1091 (8th Cir. 2003). A habeas petition by a prisoner entitled to make a § 2255 motion "shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255. The Petitioner bears the burden of demonstrating the inadequacy or ineffectiveness of relief from the sentencing court. Hill, 349 F.3d at 1091. If Petitioner does not prove that the relief is inadequate or ineffective, the court of incarceration lacks jurisdiction over the habeas petition. Id.

> [I]n order to establish a remedy is "inadequate or ineffective" under § 2255, there must be more than a procedural barrier to bringing a § 2255 petition. [A] § 2255 motion is not "inadequate or ineffective" merely because: (1) § 2255 relief has already been denied, (2) [the] petitioner has been denied permission to file a second or successive § 2255 motion, (3) a second or successive § 2255 motion has been dismissed, or (4) [the] petitioner has allowed the one year statute of limitations and/or grace period to expire. Id. at 1092 (internal citations omitted).

Respondents aver that Petitioner has previously filed four motions pursuant to 28 U.S.C. § 2255 and other collateral attacks in the United States District Court for the Western District of Michigan. See United States v. Modena, Case No. 1:99-CR-47 (W.D. Mich.) (Docket Nos. 439, 461, 583, 585); Modena v. United States, Case No. 1:03-CV-413 (W.D. Mich.) (Docket No. 4); Modena v. United States, Case No. 1:05-CV-184 (W.D. Mich.) (Docket No. 4). Petitioner has adduced no evidence whatsoever to support a finding that his § 2255 motion remedy in the Western District of Michigan is inadequate or ineffective to test the legality of his detention. The portion of Petitioner's Habeas Petition related to his various sentencing arguments is dismissed for lack of jurisdiction.

Petitioner has filed numerous other motions and affidavits setting forth essentially the same claims as his Habeas Petition. This ruling is intended to address and dispose of all of Petitioner's other filings that raise the same arguments, including Docket Numbers 4, 31, 42, 50, 53, 58, and 61. Finally, Petitioner has filed a Motion to Order Respondents to Produce P.S. 5880.28 [Docket No. 66]. Because Petitioner's Habeas Petition is dismissed, this Motion is denied as moot.

On close to a daily basis, Petitioner has filed voluminous motions and affidavits. This Order is meant to address them all. Any further pursuit of these same issues must be by appeal to the United States Court of Appeals for the Eighth Circuit.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner's Motion to Order Injunction Against B.O.P. DNA Collection [Docket No. 8] is **DENIED**;

2. Petitioner's Motion for TRO [Docket No. 49] is **DENIED**;

3. Petitioner's Audita Querela Motion [Docket No. 50] is **DENIED**;

4. Petitioner's Contempt Motion [Docket No. 55] is **DENIED**;

5. Petitioner's Exparte Request for Conference Call [Docket No. 62] is **DENIED**;

6. Petitioner's Transfer Motions [Docket Nos. 58, 63] are **DENIED**;

7. Petitioner's Habeas Petition [Docket No. 9] is **DISMISSED**; and

8. Petitioner's remaining Motions that address the legal claims and arguments discussed above [Docket Nos. 4, 30, 31, 40, 42, 53, 61, 64, 66, 69] are **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 3, 2006.